UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LISA D. WILSON, | : | Case No. 3:16-cv-450 |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Lisa D. Wilson brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. She applied for benefits on October 10, 2013, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Eric Anschuetz concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Anschuetz's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since December 13, 2012. She was thirty-seven years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). She has a high school education. *See* 20 C.F.R. § 416.964(b)(4).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Anschuetz that she became disabled in October 2013 because her "incontinence has gotten worse …." (Doc. #6, *PageID* #108). She has both fecal and bladder incontinence. *Id.* at 112. She wears diapers every day. *Id*. In the past, she did pelvic floor therapy and it helped. *Id.* at 125. But when asked if it helped now, she responded "[n]ot really." *Id.* at 114. She takes Loperamine to stop diarrhea but it does not help her incontinence. *Id*.

In a typical day, Plaintiff has to use the bathroom between fifteen and twenty times. *Id.* at 124. She is usually in the bathroom for ten minutes but can be for up to thirty minutes. *Id*. She has very little warning from the time she realizes she needs to go to the bathroom and when there is a release. *Id*. She has a minimum of three accidents a day. *Id*. She has accidents at home and out in public. *Id.* at 124-25. Plaintiff also has abdominal cramping. *Id.* at 127.

Plaintiff had surgery for ovarian cancer in March 2014. *Id.* at 112-13, 126. Following surgery, she underwent chemotherapy for six months. *Id.* at 106. At the time of the hearing, she was cancer free. *Id.* at 129.

However, she developed a ventral hernia a few months after surgery. *Id.* at 113. They suggested surgery for it, but, "I need to quit smoking to ensure my outcome [will] be good." *Id*.

In the last couple years, Plaintiff has seen her gastroenterologist, Dr. Wille, the most often. *Id.* at 111. She sees Dr. Ashby, her urogynecologist, second most often. *Id.* at 111-12. Plaintiff takes several medications: Gabapentin, Latuda, Wellbutrin, Alprazolam, Loperamide, Dicyclomine, Omeprazole, Metoprolol, fish oil, and vitamin D. *Id.* at 113.

Plaintiff attends counseling weekly with Kathy Biehn for depression and anxiety. *Id.* at 112. She sees Dr. Barclay, a psychiatrist, once a month. *Id.* at 116. Plaintiff believes that counseling helps but she has not found any medications that help. *Id.* at 116. The medications Dr. Barclay prescribes make her dizzy and drowsy. *Id.* at 127. She has chronic spells of tearfulness three to four times a week. *Id*.

The ALJ asked Plaintiff, "If you were offered a job today, would you take it?" *Id.* at 111. She responded, "If I could do it." *Id.* When asked what kind of work she thought she could do, Plaintiff retorted, "I haven't figured that out." *Id.* She further explained she would "need a bathroom close by and have someone patient enough to let me have frequent breaks … and if I had an accident[,] I don't know what would happen. … I have to go home and get cleaned up." *Id*.

3

Plaintiff lives in a house with her aunt. *Id.* at 116. She has one son who is away at college. *Id.* She has a driver's license and usually drives about once a week to therapy. *Id.* She sometimes drives to drop off prescriptions as well. *Id.* at 123. She estimated that she can lift and carry "[m]aybe 20 pounds." *Id.* at 117. She can walk "maybe around a block." *Id.* at 118. She smokes "[a]bout a pack a day." *Id.* She usually goes to bed at 11 and wakes up around 9:30 or 10. *Id.* at 120. During the day, she watches TV. *Id.* She also makes jewelry that she tries to sell at quarter auctions. *Id.* at 121-22. She does some laundry. *Id.* at 122. She does not cook but she can prepare cereal and use the microwave. *Id.* at 122-23. Plaintiff and her aunt go out dinner once every few months. *Id.* at 127.

Plaintiff testified that she is five-foot, six and one-half inches tall and weighs 315 pounds. *Id.* at 107. She explained that she gained "about 100 pounds before they figured out that [she] had cancer." *Id.*

**B.    Medical Opinions**

### i.    Katherine A. Biehn, MS, LPCC-S

Marisa Borgert, Psy.D., and Ms. Biehn, Plaintiff's counselor, wrote a letter in January 2012 indicating that Plaintiff began counseling at their office in August 2011 and had been seen weekly since that time. *Id.* at 1068. She opined Plaintiff has been diagnosed with Major Depressive Disorder, Single Episode, Severe; Posttraumatic Stress Disorder; and Generalized Anxiety Disorder. *Id.*

Ms. Biehn also included a Brief Mental Status Exam Form. *Id.* at 1067. She indicated Plaintiff had a poor appearance, was depressed, tearful, and anxious; had

4

disorganized thought processes; was distractible and inattentive; and had fair insight/judgment. *Id.*

In June 2012, Ms. Biehn completed interrogatories (signed off by Dr. Bruce Kline). *Id.* at 414-26. She opined, "The physical, cognitive, and emotion impairments she has been experiencing have exacerbated her depression, anxiety, and trauma symptoms." *Id.* at 416. She indicated Plaintiff was not able to be prompt and regular in attendance, explaining, "Lisa has reported that there are mornings she wakes up and is not able to get out of the house due to her physical and/or emotional issues." *Id.* at 417. "On a few occasions when she has been unable to get out of bed, we have had to do phone sessions." *Id.* at 418. Plaintiff is not able to sustain attention and concentration to meet normal standards of work productivity and accuracy and is not able to understand, remember, and carry out simple work instructions without requiring very close supervision. *Id.* She is "highly distractible and her thought processes are disorganized." *Id.* at 420. Additionally, she is "significantly depressed and highly emotional." *Id.* at 419. Ms. Biehn opined that Plaintiff has a marked restriction of activities of daily living; slight difficulties in maintaining social functioning; and marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. *Id.* at 422-23.

Ms. Biehn identified the following as Plaintiff's signs and symptoms: poor memory, sleep disturbance, mood disturbances, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, intrusive recollections of a traumatic experience, and generalized persistent anxiety. *Id.* at 424.

5

Plaintiff's impairments or treatment would cause her to be absent from work more than three times a month. *Id.* at 426.

In October 2015, Ms. Biehn provided another opinion. *Id.* at 1274. She noted that in addition to Plaintiff's prior impairments, she also has hoarding disorder. *Id.* She opined, "The physical impairments that Ms. Wilson experiences on a daily basis greatly affect her emotional stability. Ms. Wilson's physical disabilities are so extreme that she is in no way capable of functioning in any kind of work environment. Approximately twice per month Ms. Wilson is unable to attend scheduled appointments at this office due to urinary incontinence, fecal incontinence, or vomiting. When this occurs, Ms. Wilson is able to do a phone session with this therapist." *Id.* Further, "Ms. Wilson's mental disorders are rated as severe. Ms. Wilson admits to suicidal ideation on an almost daily basis. … Ms. Wilson's quality of life is judged as very poor. [She] is tearful in most therapy sessions and has shown no improvement in mood." *Id.* at 1275. Ms. Biehn concluded, "It is in this Independantly Licensed Professional's opinion that Ms. Wilson is rendered completely unemployable due to both physical and mental limitations." *Id.*

Marisa Borgert, Psy.D., also provided an opinion based on her individual therapy with Plaintiff's son, Jonah, and family sessions with Plaintiff and her son. *Id.* at 1278. She explained, "Jonah's mother's health and functioning was often a topic in therapy as it exacerbated Jonah's symptoms of depression and anxiety." *Id.* "A focus of treatment was stress relating to Jonah having to participate in the care of his mother, as well as increased responsibility placed upon him due to his mother's struggles. His mother was often unable to complete daily living requirements, as well as tasks needed to care for the

family and residence." *Id.* Plaintiff's son sometimes had to assist his mother "with hygenic tasks and tasks of daily living." *Id.* Dr. Borgert opined that during family sessions, "it was clear that Ms. Wilson's functioning was below what would be expected. Her mental and physical diagnoses have greatly limited her ability to function …." *Id.*

### ii. Robyn Hoffman, Ph.D., & Vicki Warren, Ph.D.

Dr. Hoffman reviewed Plaintiff's records on March 30, 2014. *Id.* at 207-18. She found Plaintiff had four severe impairments: asthma, gastritis and duodenitis, obesity, and anxiety disorders. *Id.* at 212. She opined Plaintiff had a moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of decompensation. *Id.* at 213. Dr. Hoffman's mental residual functional capacity "is an adoption of the ALJ decision dated 7/17/12 which is being adopted under AR [(Acquiescence Ruling)] 98–4 (Drummond)." *Id.* at 216. She noted Plaintiff "can tolerate occasional and superficial interactions with others, can carry out SRTs with no strict production demands, [and is] able to adapt to occasional changes in the work setting (with [clear] expectations and instructions)." *Id.*

On July 27, 2014, Dr. Warren reviewed Plaintiff's records and affirmed Dr. Hoffman's assessment. *Id.* at 220-32.

### iii. Eli Perencevich, D.O., & Leslie Green, M.D.

Dr. Perencevich reviewed Plaintiff's records on April 17, 2014. *Id.* at 207-18. He opined Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. *Id.* at 214. She could stand and/or walk for six hours in an eight-hour

7

workday and sit for a total six hours.  *Id.* at 214-15.  She can never climb ramps, stairs, ladders, ropes, or scaffolds.  *Id.* at 215.  She should avoid concentrated exposure to hazards such as machinery and heights.  *Id.* at 216.  In his additional explanation (but not in environmental limitations section), he indicated she should avoid concentrated exposure to extreme temps.  *Id*.  Further, she needs ready access to a bathroom.  *Id*.  He adopted the residual functional capacity "of the ALJ decision dated 7/17/12 …."  *Id*.  He noted that she has a new condition—ovarian cancer—but concluded, "it was successfully resected and she has no continued limitations from this."  *Id*.

On July 16, 2014, Dr. Green reviewed Plaintiff's records and agreed with most of Dr. Perencevich's assessment.  *Id.* at 220-32.  However, Dr. Green found that Plaintiff could occasionally stoop and climb ramps and stairs.  *Id.* at 229.  She should avoid concentrated exposure to extreme cold, extreme heat, and humidity.  *Id.*  Dr. Green further noted that she too adopted the previous ALJ's residual functional capacity assessment.  *Id.* at 230.

## III. <u>Standard of Review</u>

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a).  The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful

8

activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

9

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Anschuetz to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since October 10, 2013.

Step 2: She has the severe impairments of obesity, gastritis, asthma, and dysthymia.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work …, subject to the following limitations: (1) lift 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a combined total of 6 hours and sit for a total of 6 hours each during an 8-hour workday; (3) never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; (4) no limitations in the ability to balance, stoop, kneel, crouch, and crawl; (5) The claimant must avoid workplace hazards, such as unprotected heights and unprotected rotating machinery; (6) no exposure to humidity and wetness, extreme cold, or extreme heat; (7) The claimant must have ready access (proximity) to a bathroom while at work; (8) limited to performing simple, routine, repetitive tasks, but not at a production rate with no more than occasional work-related decisions; ([9]) the claimant can adapt to occasional changes in the workplace setting; and the claimant is limited to occasional interaction with supervisors, coworkers, and the public."

| | | |
|---|---|---|
| Step 4: | | She has no past relevant work. |
| Step 5: | | She could perform a significant number of jobs that exist in the national economy. |

(Doc. #6, *PageID* #s 74-90). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 90.

## V. Discussion

Plaintiff contends that the ALJ erred in not finding a worsening of Plaintiff's physical and mental impairments since the previous ALJ's decision. Further, she asserts that the ALJ failed to give appropriate weight to her treating therapist's opinion. The Commissioner maintains that the ALJ properly evaluated Plaintiff's impairments and substantial evidence supports the ALJ's evaluation of the opinion evidence.

### A. Plaintiff's Impairments

Plaintiff filed a prior application for Social Security benefits in October 2010. (Doc. #6, *PageID* #74). On July 17, 2012, ALJ Jessica Inouye concluded Plaintiff was not under a disability and the Appeals Council affirmed her decision. *Id.* at 184-96. In the present case, ALJ Anschuetz found, "The current residual functional capacity is substantially similar to that found by the prior Administrative Law Judge and reflects the fact that there has been no material change in [Plaintiff's] condition since the date of the prior decision in this case. Therefore, this decision is consistent with Drummond v. Commissioner of Social Security, … and Social Security AR 98-4(6)." *Id.* at 74.

The Sixth Circuit held in *Drummond*, "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by

11

this determination absent changed circumstances." *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837, 842 (6th Cir. 1997) (citations omitted). After *Drummond,* the Commissioner issued an Acquiescence Ruling mandating ALJs in Ohio (and other states within the Sixth Circuit) to follow *Drummond* by applying res judicata to a prior assessment of a claimant's residual functional capacity and other prior findings made as part of a sequential evaluation. The Acquiescence Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law....

AR 98–4(6), 1998 WL 283902, at *3 (Soc. Sec. Admin. June 1, 1998).

ALJ Anschuetz explained, "With very minor exceptions, the record does not document a significant change in [Plaintiff's] condition since the prior ALJ Decision." (Doc. #6, *PageID* #84). But Plaintiff disagrees: "the current medical record supports a finding of a worsening in Ms. Wilson's physical and mental impairments." (Doc. #9, *PageID* #1788). She points to her lower back problems, mixed incontinence, hernias, residuals of ovarian cancer, and mental impairments. *Id.* at 1788-91.

The ALJ did acknowledge Plaintiff's history of ovarian cancer but concluded that it "was surgically and medically treated with no recurrence or residual limitations remaining after 12 months." (Doc. #6, *PageID* #84). The record shows that Plaintiff was diagnosed with cervical cancer, and in March 2014, she underwent a total abdominal

hysterectomy. *Id.* at 869-71. She completed chemotherapy in August 2014. *Id.* at 1151. She remains cancer free. *Id.* at 129.

Since Plaintiff's surgery, she has hernias. In August, 2014, a CT scan of Plaintiff's pelvis revealed two midline ventral hernias. *Id.* at 1174-75. In May 2015, Plaintiff presented to Dr. Christopher Schneider with a significant increase in abdominal pain. *Id.* at 1297. Dr. Schneider found tenderness in Plaintiff's abdomen, and he noted, "Multiple ventral hernias along the incision. At least 2 large incarcerated ones. Painful to deep palpation." *Id.* He indicated that he had "mixed feelings about fixing her hernia" because she had three major risk factors: obesity, steroid use, and smoking. *Id.* at 1308. Dr. Schneider informed Plaintiff that if she quit smoking, he would perform the surgery as he thought "it is reasonable to repair despite her obesity." *Id.* at 1298.

The ALJ concluded Plaintiff's hernias were not a severe impairment: "Given the recent occurrence of this minor condition, its easy treatability, and [Plaintiff's] failure to follow her treating surgeon's instructions, this cannot reasonably be considered severe within the meaning of the Social [S]ecurity Act." *Id.* at 78. The ALJ, however, provided no basis for his conclusion that Plaintiff's hernias were minor or easily treatable. The State agency physicians reviewed Plaintiff's records prior to the diagnosis and Plaintiff's treating physicians did not indicate her hernias are minor or easily treatable.

Plaintiff contends that the ALJ erred in not considering her hernias a severe impairment. Likewise, she asserts that he erred in not finding her incontinence a severe impairment. But, even if the ALJ erred at Step Two, generally, an ALJ does not commit reversible error by finding a non-severe impairment as long as: (1) the ALJ also found

13

that the claimant has at least one severe impairment; and (2) the ALJ considered both the severe and non-severe impairments at the remaining steps in the sequential evaluation. *See Maziarz v. Sec'y of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); *see also Fisk v. Astrue,* 253 F. App'x 580, 583 (6th Cir. 2007); *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 577 (6th Cir. 2009); *Pompa v. Comm'r of Soc. Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003) ("[O]nce the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps.").

In the present case, the ALJ found several other severe impairments. Thus, the issue is whether the ALJ considered both the severe and non-severe impairments at the remaining steps in his decision. But, Plaintiff's severe and not-severe impairments cannot only be considered individually: "'[O]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (quoting *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009)).

The ALJ does appear to consider limitations from Plaintiff's hernias: "Taking into consideration [Plaintiff's] abdominal issues, even including her history of ovarian cancer and current minor ventral hernia condition, it is appropriate to again restrict [Plaintiff] to the basic exertional requirements of light work activity." (Doc. #6, *PageID* #84).

The ALJ also addressed Plaintiff's incontinence: "Taking into consideration [Plaintiff's] incontinence to the extent documented by the medical record, she must be afforded ready access, or proximity, to a restroom while at work in the event she must go

14

with little warning." *Id.* at 85. However, the ALJ discounts Plaintiff's reports because "no treating or examining source has observed incontinence or her reported accidents." *Id.* Taken at face value, it is absurd to require a physician to actually observe a patient's incontinence before finding she has incontinence and needs ready access and proximity to a restroom. The medical record also includes a note from Plaintiff's family-care physician noted in October 2013, "[I] suggested she talk with [Dr. Ashby] as her fecal and urinary incontinence makes her unemployable." *Id.* at 570-73. But the ALJ does not address it.

The ALJ, moreover, does not give any indication that he considered the combined effect of Plaintiff's hernias and incontinence. Dr. Schneider noted Plaintiff's hernias caused a significant increase in her abdominal pain. *Id.* at 1297. Plaintiff testified that when she uses the bathroom, it can take anywhere from ten to thirty minutes. *Id.* at 124. And if she had an accident at work, "I have to go home and get cleaned up." *Id.* at 111. Ms. Biehn, Plaintiff's counselor, explained, "Ms. Wilson has reported many occasions where she has needed the assistance of her family to help her clean up after her incontinence. Cleaning up after an 'accident' has become especially difficult since the development of a hernia in her abdomen. … The hernia makes it difficult for her to maneuver her body in a way that allows her to reach and thoroughly clean her body after an accident." *Id.* at 1275. This is supported by Plaintiff's son's psychologist, who noted "Jonah reported times during which he would have to care for his mother by assisting

with hygienic tasks and tasks of daily living."[2] *Id.* at 1278. Because the ALJ did not consider the limitations—specifically, the time and hygiene assistance—resulting from Plaintiff's hernia in combination with her incontinence, substantial evidence does not support the ALJ's decision.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

**B.    Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

---

[2] The ALJ gave this statement no weight because Dr. Borgert "provided individual therapy for [Plaintiff's] son, Jonah Wilson, until August of 2011 …." (Doc. #6, *PageID* #87). Further, Dr. Borgert "stated only she was included in some family sessions and there are not treatment records documenting those sessions or the information discussed or observations made." *Id.* at 88. However, the ALJ misread Dr. Borgert's opinion. She indicates, in her letter dated October 19, 2015, that Plaintiff's son "was been seen in my office for individual therapy *from 2011* until he departed for college in August of this year." *Id.* at 1278 (emphasis added). Further, there is no indication that the ALJ considered that between June 2015 and August 2015, Ms. Biehn noted at six appointments with Plaintiff that Plaintiff's son and Dr. Borgert were present for joint sessions "to work on their relationship." *See id.* at 1706-07, 1709-10, 1712-13.

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Lisa D. Wilson was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

Date: January 31, 2018

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).